UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

JUN 26 2024 PM 2:44
FILED - USDC - BPT - CT

JOAN CICCHIELLO
Petitioner
v
COLLETTE PERTERS, et al
Respondent

Case no.  3:24 CV 855

### RESPONSE TO RESPONDANTS REPLY FOR ORDER TO SHOW CAUSE

Petitioner would like for this to be simple.  I know my case is complicated but I am hoping to show that Petitioner should have immediate Release.

Respondent quotes  Levine v Apker, 455  F.3d 71, 77(2d Cir 2006).  In that case it talks about "Custody"  See Exhibit 1 Perhaps a simple drawing Explains "In Custody".  Petitioner physically is housed in the State of Connecticut and this prison is located in the Second District where my civil rights are being denied.

Petitioner and Respondent both agree that Petitioner has earned 145 First Step Act Time Credit (FSATC) prior to March 27, 2024.

Petitioner has attached the following Paperwork/and or excerpts of the following to substantiate her claim:

First Step Act  (Exhibit 2)  Federal Register (Exhibit 3) and Program  Statement from the Us Department of Justice and the Federal Bureau of Prisons (Exhibit 4).

All three exhibits discuss who is eligible.  The First Step Act (FSA)  states:  A "In General- A prisoner, except for an ineligible prisoner under subparagraph D who successfully completes evidence based recidivism reduction programming or productive activities shall earn Time Credits.....

D Ineligible Prisoner...is a prisoner who is serving a sentence for a conviction under any of the following provisions of law.

I am not charged with any provisions of the law that would exclude me from earning FSATC nor am I deportable per any final order of removal.

According to the Federal Register/Vol. 87 No 12 Wednesday, January 19, 2022 Rules  and Regulations The Purpose and Definitions of the FSA are Described on Page 2717.  It then Discusses earning FSATC, Loss of FSATC and Application of FSATC on Page 2718.  See Exhibit 3

The Third set of paperwork Exhibit 4 is from :
　　　　　　　　　　US Department of Justice Federal Bureau of Prison's.
　　　　　　　　　　Change Notice
　　　　　　　　　　 OPI:  CPD/CPB
　　　　　　　　　　Number:  5410.01 CN-2

Date:  March 10, 2023.

First Step Act of 2018 --Time Credits:  Procedures for Implementation of 18 UCS 3632 (d)(4).

Page 2 Background - Provides Eligible inmates may earn............A)  EBRR Programs or B)  Productive Activity PG 3

Page 6.              4  Determination of Eligibility --Unit Team Determines the inmate's eligibility

Page 11              7 Limitations on Earning of FTC's --Inmate unable or unwilling.

                    8  Tracking and Earning of FTCs

Page 12                       LOSS AND RESTORATION OF FSATCs

Page 13                       APPLICATION OF FSATC'S

Page 17  (d)                  TRANSFER TO SUPERVISED RELEASE

  Under Exhibit 4    Under loss and restoration for FTCs the Program Statement goes on to explain that if you loose credits by the Discipline Hearing Officer (DHO) there is a process to have the FSATC restored.

I, Joan Cicchiello, have never been before the DHO for a hearing.  I have never had a discipline that warranted going to the Segregated Housing Unit  (SHU) nor have I refused programming nor productive work/activity.

Respondent has admitted to this Honorable Court that I have vested 145 FSATC and believe that this Honorable Court also agrees that Petitioner has been "In Custody" since 5/2018.

All  sets of paperwork discuss who is eligible to earn FSATC and by Law--Code who is ineligible.
All sets of Paperwork discuss EBRR and PA
All sets of Paperwork discuss Application for FSATC
All sets of Paperwork discuss Supervised Release.

Per the Program Statement Inmates (Loosely interpreted) who meet the following criteria should automatically have FSATC applied to early release:
- Has a term of supervised release to follow the term of incarceration.              YES  I DO
- Has a low or minimum PATTERN risk level                                             YES I DO
- Has maintained a low or minimum Pattern                                             Yes I DO
- Has no  detainers or pending charges nor unresolved immigration status              DEFINATELY NOT
- Is not subject to a final order of removal under immigration laws,          Definitely  Not
- Has not opted out or refused to participate in any required program, and therefore is in earning status

                    I am in earning status

Respondent has admitted that I have vested 145 FSATC and that I have been "In Custody" since 5/2018.

Petitioner realizes that Respondent erased my earned credit time without due process.  Petitioner has only 131 days on her Probation Violation and has yet to use her vested 145 days nor the current corrected 20 days now graciously given to petitioner by respondent.

Petitioner's civil rights are being denied for the following reasons:


A.  I  have earned Time Credits from the First Step Act and they were erased without due process.
B.  BOP refuses to acknowledge that my Probation Violation qualifies to have  FSATC used.
C.  Petitioner is illegally being detained.

Petitioner hopes and prays that this Honorable Court grant her immediate release due to First Step Act Time Credits.

Respectfully Submitted     Petitioner is Not A Risk to Society   See Exhibit 7

Joan Cicchiello
6/18/2024

BOP Custody

HC Monitoring

Probation

Jails
Holding
Centers

HC

Post-Sentencing
Holding
Center

RRC

CCC

Correctional
Facilities

" IN Custody "

BANK
XYZ

First Step Act
Time Credits,

145-
EARNED
Time Credits
FSA

Satellite
BANK
XYZ

Probation
Violation

Exhibit
1

# First Step Act

Page 1 —     4 Time Credits
— Eligible
— Availability
— Application of Time Credits
— Ineligible Prisoners

Page 2        Eligible Prisoners — Needs and Assessment System Participants

Pg 3        Types of Prerelease Custody

Pg 4        Supervised Release

Pg 5        Deportable Prisoners Ineligible To Apply Credit Time

Exhibit 2

"(3) ADDITIONAL POLICIES.—The Director of the Bureau of Prisons shall develop additional policies to provide appropriate incentives for successful participation and completion of evidence-based recidivism reduction programming. The incentives shall include not less than 2 of the following:

"(A) Increased commissary spending limits and product offerings.

"(B) Extended opportunities to access the email system.

"(C) Consideration of transfer to preferred housing units (including transfer to different prison facilities).

"(D) Other incentives solicited from prisoners and determined appropriate by the Director.

"(4) TIME CREDITS.—

"(A) IN GENERAL.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:



Eligible

"(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

Determination.

"(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

"(B) AVAILABILITY.—A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—

"(i) prior to the date of enactment of this subchapter; or

"(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

"(C) APPLICATION OF TIME CREDITS TOWARD PRERELEASE CUSTODY OR SUPERVISED RELEASE.—Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

Determination.

"(D) INELIGIBLE PRISONERS.—A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:

Ineligible Prisoners

"(i) Section 32, relating to destruction of aircraft or aircraft facilities.

"(ii) Section 33, relating to destruction of motor vehicles or motor vehicle facilities.

"(iii) Section 36, relating to drive-by shootings.

"(iv) Section 81, relating to arson within special maritime and territorial jurisdiction.



132 STAT. 5210        PUBLIC LAW 115–391—DEC. 21, 2018

in evidence-based recidivism reduction programs or productive activities, according to their specific criminogenic needs, throughout their entire term of incarceration. Priority for participation in recidivism reduction programs shall be given to medium-risk and high-risk prisoners, with access to productive activities given to minimum-risk and low-risk prisoners.

"(7) DEFINITIONS.—The terms in this subsection have the meaning given those terms in section 3635.".

(b) PRERELEASE CUSTODY.—

(1) IN GENERAL.—Section 3624 of title 18, United States Code, is amended—

(A) in subsection (b)(1)—

(i) by striking ", beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," and inserting "of up to 54 days for each year of the prisoner's sentence imposed by the court,"; and

(ii) by striking "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence" and inserting "credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment"; and

(B) by adding at the end the following:

"(g) PRERELEASE CUSTODY OR SUPERVISED RELEASE FOR RISK AND NEEDS ASSESSMENT SYSTEM PARTICIPANTS.—

Applicability.

"(1) ELIGIBLE PRISONERS.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—

"(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the 'System') in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

"(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

"(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

Determinations.

"(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—

"(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

"(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that—

"(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

"(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

*Eligible Prisoners*

*g — 50*

PUBLIC LAW 115–391—DEC. 21, 2018     132 STAT. 5211

"(cc) the prisoner is unlikely to recidivate; or
"(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

"(2) TYPES OF PRERELEASE CUSTODY.—A prisoner shall be placed in prerelease custody as follows:

"(A) HOME CONFINEMENT.—                    Determinations.

"(i) IN GENERAL.—A prisoner placed in prerelease custody pursuant to this subsection who is placed in home confinement shall—

"(I) be subject to 24-hour electronic monitoring that enables the prompt identification of the prisoner, location, and time, in the case of any violation of subclause (II);

"(II) remain in the prisoner's residence, except that the prisoner may leave the prisoner's home in order to, subject to the approval of the Director of the Bureau of Prisons—

"(aa) perform a job or job-related activities, including an apprenticeship, or participate in job-seeking activities;

"(bb) participate in evidence-based recidivism reduction programming or productive activities assigned by the System, or similar activities;

"(cc) perform community service;

"(dd) participate in crime victim restoration activities;

"(ee) receive medical treatment;

"(ff) attend religious activities; or

"(gg) participate in other family-related activities that facilitate the prisoner's successful reentry such as a family funeral, a family wedding, or to visit a family member who is seriously ill; and

"(III) comply with such other conditions as the Director determines appropriate.

"(ii) ALTERNATE MEANS OF MONITORING.—If the electronic monitoring of a prisoner described in clause (i)(I) is infeasible for technical or religious reasons, the Director of the Bureau of Prisons may use alternative means of monitoring a prisoner placed in home confinement that the Director determines are as effective or more effective than the electronic monitoring described in clause (i)(I).

"(iii) MODIFICATIONS.—The Director of the Bureau of Prisons may modify the conditions described in clause (i) if the Director determines that a compelling reason exists to do so, and that the prisoner has demonstrated exemplary compliance with such conditions.

"(iv) DURATION.—Except as provided in paragraph (4), a prisoner who is placed in home confinement shall remain in home confinement until the prisoner has served not less than 85 percent of the prisoner's imposed term of imprisonment.

2–3

132 STAT. 5212          PUBLIC LAW 115–391—DEC. 21, 2018

"(B) RESIDENTIAL REENTRY CENTER.—A prisoner placed in prerelease custody pursuant to this subsection who is placed at a residential reentry center shall be subject to such conditions as the Director of the Bureau of Prisons determines appropriate.

"(3) SUPERVISED RELEASE.—If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

"(4) DETERMINATION OF CONDITIONS.—In determining appropriate conditions for prisoners placed in prerelease custody pursuant to this subsection, the Director of the Bureau of Prisons shall, to the extent practicable, provide that increasingly less restrictive conditions shall be imposed on prisoners who demonstrate continued compliance with the conditions of such prerelease custody, so as to most effectively prepare such prisoners for reentry.

"(5) VIOLATIONS OF CONDITIONS.—If a prisoner violates a condition of the prisoner's prerelease custody, the Director of the Bureau of Prisons may impose such additional conditions on the prisoner's prerelease custody as the Director of the Bureau of Prisons determines appropriate, or revoke the prisoner's prerelease custody and require the prisoner to serve the remainder of the term of imprisonment to which the prisoner was sentenced, or any portion thereof, in prison. If the violation is nontechnical in nature, the Director of the Bureau of Prisons shall revoke the prisoner's prerelease custody.

Consultation.
Determination.

"(6) ISSUANCE OF GUIDELINES.—The Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining—

"(A) the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection; and

"(B) consequences for a violation of a condition of such prerelease custody by such a prisoner, including a return to prison and a reassessment of evidence-based recidivism risk level under the System.

"(7) AGREEMENTS WITH UNITED STATES PROBATION AND PRETRIAL SERVICES.—The Director of the Bureau of Prisons shall, to the greatest extent practicable, enter into agreements with United States Probation and Pretrial Services to supervise prisoners placed in home confinement under this subsection. Such agreements shall—

"(A) authorize United States Probation and Pretrial Services to exercise the authority granted to the Director pursuant to paragraphs (3) and (4); and

"(B) take into account the resource requirements of United States Probation and Pretrial Services as a result of the transfer of Bureau of Prisons prisoners to prerelease custody or supervised release.

Supervised Release 2-4

PUBLIC LAW 115–391—DEC. 21, 2018          132 STAT. 5203

(21 U.S.C. 960(b)), relating to manufacturing, distrib-
uting, dispensing, or possessing with intent to manu-
facture, distribute, or dispense, a controlled substance,
or knowingly importing or exporting a controlled sub-
stance, if the sentencing court finds that—

"(I) the offense involved a mixture or sub-
stance containing a detectable amount of N-phenyl-
N-[1-(2-phenylethyl)-4-piperidinyl]   propanamide,
or any analogue thereof; and

"(II) the offender was an organizer, leader,          Determination.
manager, or supervisor of others in the offense,       Guidelines.
as determined under the guidelines promulgated
by the United States Sentencing Commission.

"(E) DEPORTABLE PRISONERS INELIGIBLE TO APPLY TIME
CREDITS.—

"(i) IN GENERAL.—A prisoner is ineligible to apply
time credits under subparagraph (C) if the prisoner
is the subject of a final order of removal under any
provision of the immigration laws (as such term is
defined in section 101(a)(17) of the Immigration and
Nationality Act (8 U.S.C. 1101(a)(17))).

"(ii) PROCEEDINGS.—The Attorney General, in con-          Consultation.
sultation with the Secretary of Homeland Security,
shall ensure that any alien described in section 212
or 237 of the Immigration and Nationality Act (8 U.S.C.
1182, 1227) who seeks to earn time credits are subject
to proceedings described in section 238(a) of that Act
(8 U.S.C. 1228(a)) at a date as early as practicable
during the prisoner's incarceration.

"(5) RISK REASSESSMENTS AND LEVEL ADJUSTMENT.—A pris-
oner who successfully participates in evidence-based recidivism
reduction programming or productive activities shall receive
periodic risk reassessments not less often than annually, and
a prisoner determined to be at a medium or high risk of
recidivating and who has less than 5 years until his or her
projected release date shall receive more frequent risk reassess-
ments. If the reassessment shows that the prisoner's risk of      Update.
recidivating or specific needs have changed, the Bureau of        Determination.
Prisons shall update the determination of the prisoner's risk
of recidivating or information regarding the prisoner's specific
needs and reassign the prisoner to appropriate evidence-based
recidivism reduction programming or productive activities
based on such changes.

"(6) RELATION TO OTHER INCENTIVE PROGRAMS.—The incen-
tives described in this subsection shall be in addition to any
other rewards or incentives for which a prisoner may be eligible.

"(e) PENALTIES.—The Director of the Bureau of Prisons shall      Guidelines.
develop guidelines for the reduction of rewards and incentives
earned under subsection (d) for prisoners who violate prison rules
or evidence-based recidivism reduction program or productive
activity rules, which shall provide—

"(1) general levels of violations and resulting reductions;

"(2) that any reduction that includes the loss of time credits      Notice.
shall require written notice to the prisoner, shall be limited
to time credits that a prisoner earned as of the date of the
prisoner's rule violation, and shall not include any future time
credits that the prisoner may earn; and

INELIGIBLE PRISONERS
Deportable                  2.5

Federal Register / Vol. 87 No 12
Wednesday, January 19, 2022
Rules and Regulations.

Pg 2717   —   Purpose   § 523.40
—   Definitions  § 523.41

Pg 2718 —   Earning First Step Act Time
Credits   § 523.42.

—   Loss of FSA Time Credits.
§ 523.43

—   Application of FSA
Time Credits  § 523.44

—   Subchapter C
Part 541 Inmate Discipline
And Special Housing Units

Exhibit
3

levels of government. Therefore, under Executive Order 13132, we determine that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

*Regulatory Flexibility Act:* The Director of the Bureau of Prisons, under the Regulatory Flexibility Act (5 U.S.C. 605(b)), reviewed this rule and certifies that it will not have a significant economic impact upon a substantial number of small entities for the following reasons: This rule pertains to the correctional management of offenders committed to the custody of the Attorney General or the Director of the Bureau of Prisons, and its economic impact is limited to the Bureau's appropriated funds.

*Unfunded Mandates Reform Act of 1995:* This rule will not result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

*Congressional Review Act:* This rule is not a major rule as defined by the Congressional Review Act, 5 U.S.C. 804.

For the foregoing reasons, we issue the regulations regarding the First Step Act Time Credits, proposed on November 25, 2020, with modifications, as set forth below.

**List of Subjects in 28 CFR Parts 523 and 541**

Prisoners.

**Michael D. Carvajal,**

*Director, Federal Bureau of Prisons.*

Under rulemaking authority vested in the Attorney General in 5 U.S.C. 301; 28 U.S.C. 509, 510 and delegated to the Director, Bureau of Prisons in 28 CFR 0.96, we amend 28 CFR parts 523 and 541 as follows:

**Subchapter B—Inmate Admission, Classification, and Transfer**

**PART 523—COMPUTATION OF SENTENCE**

■ 1. The authority citation for 28 CFR part 523 is revised to read as follows:

**Authority:** 5 U.S.C. 301; 18 U.S.C. 3568 (repealed November 1, 1987, as to offenses committed on or after that date), 3621, 3622, 3624, 3632, 3635, 4001, 4042, 4081, 4082 (repealed in part as to conduct occurring on or after November 1, 1987), 4161–4166 (repealed October 12, 1984, as to offenses committed on or after November 1, 1987), 5006–5024 (repealed October 12, 1984, as to conduct occurring after that date), 5039; 28 U.S.C. 509, 510.

■ 2. Add subpart E to read as follows:

**Subpart E—First Step Act Time Credits**

Sec.
523.40   Purpose.
523.41   Definitions.
523.42   Earning First Step Act Time Credits.
523.43   Loss of FSA Time Credits.
523.44   Application of FSA Time Credits.

**§ 523.40   Purpose.**

(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115–391, December 21, 2018, 132 Stat. 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits."

(b) Generally, as defined and described in this subpart, an eligible inmate who successfully participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).

**§ 523.41   Definitions.**

(a) *Evidence-Based Recidivism Reduction (EBRR) Program.* An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:

(1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

(2) Family relationship building, structured parent-child interaction, and parenting skills;

(3) Classes on morals or ethics;

(4) Academic classes;

(5) Cognitive behavioral treatment;

(6) Mentoring;

(7) Substance abuse treatment;

(8) Vocational training;

(9) Faith-based classes or services;

(10) Civic engagement and reintegrative community services;

(11) Inmate work and employment opportunities;

(12) Victim impact classes or other restorative justice programs; and

(13) Trauma counseling and trauma-informed support programs.

(b) *Productive Activity (PA).* A PA is a group or individual activity that

allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidiving.

(c) *Successful participation.* (1) An eligible inmate must be "successfully participating" in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs.

(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.

(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.

(4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:

(i) Placement in a Special Housing Unit;

(ii) Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

(iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);

(iv) Placement in mental health/psychiatric holds; or

(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

(5)(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.

(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation (*see* this part).

(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA,

CICCHIELLO, JOAN  72896067

3-1

until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).

(d) *Eligible inmate*—(1) *Eligible to earn FSA Time Credits.* An inmate who is *eligible to earn* FSA Time Credits is an *eligible inmate* for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.

(2) *Exception.* If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not *eligible to earn* FSA Time Credits.

## § 523.42   Earning First Step Act Time Credits.

(a) *When an eligible inmate begins earning FSA Time Credits.* An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

(b) *Dates of participation in EBRRs or PAs.* (1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.

(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.

(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.

(c) *Amount of FSA Time Credits that may be earned.* (1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.

(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:

(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and

(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

## § 523.43   Loss of FSA Time Credits.

(a) *Procedure for loss of FSA Time Credits.* An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA. The procedures for loss of FSA Time Credits are described in 28 CFR part 541.

(b) *How to appeal loss of FSA Time Credits.* Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).

(c) *Restoration of FSA Time Credits.* An inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau.

## § 523.44   Application of FSA Time Credits.

(a) *How Time Credits may be applied.* For any inmate eligible to earn FSA Time Credits under this subpart who is:

(1) Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.

(2) Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (*see* 18 U.S.C. 3632(d)(4)(E)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.

(3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code (see Section 105 of the FSA, Pub. L. 115–391, 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release. This paragraph (a)(3) will not bar the application of FSA Time Credits, as authorized by the DC Code, for those serving a term of imprisonment for an offense under the DC Code.

(b) *Consideration for application of FSA Time Credits.* Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to

supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:

(1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;

(2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and

(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

(c) *Prerelease custody.* The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:

(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:

(i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(iii) The prisoner is unlikely to recidivate.

(d) *Transfer to supervised release.* The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:

(1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;

(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and

(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

**Subchapter C—Institutional Management**

## PART 541—INMATE DISCIPLINE AND SPECIAL HOUSING UNITS

■ 3. The authority citation for part 541 continues to read as follows:

**Authority:** 5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082 (Repealed in part as to offenses committed on or after November 1, 1987), 4161–4166 (Repealed as

CICCHIELLO, JOAN   72896067

3-2

U.S. Department of Justice.
Federal Bureau of Prisons.

CHANGE Notice
OPI      CPD/ CPB
Number    5410.01 CN-2.
Date      March 10, 2023

First Step Act of 2018 – Time Credits:
Procedures For Implementation of
18 USC § 3632(d)(4)

Page 2 - Background  –  Provides eligible inmates
                   may earn . . . . .
                   A) EBRR Programs   or  B) Productive Activity)
                                                                Pg 3

Pg 4.        4. Determination of Eligibility
                   Unit team Determines the Inmate's eligibility

Pg 11 .  7 Limitations on earning of FTC's
                   Inmate unable or unwilling

         8 Tracking and earning of FTC's

Pg 12     Loss and Restoration of FTC's        Exhibit
Pg 13     Application of FTC's                  4

Pg 17   (d)

Transfer to Supervised
Release

Exhibit
4-A



**U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E   N O T I C E
OPI:          CPD/CPB
NUMBER:   5410.01 CN-2
DATE:        March 10, 2023

# First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

/s/
*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following changes to Program Statement 5410.01, **First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)**, dated November 18, 2022.

*The highlighted text has been changed (either added or struck through) in **Section 10. APPLICATION OF FTCs***:

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure**, separate from any FSA eligibility criteria, and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement. However, in all cases, earned time credits will be applied to prerelease custody (RRC and/or HC) as required by the First Step Act.

The First Step Act requires that, if an individual meets the criteria outlined in (c)(1), the credits must be applied when the amount of time credits earned is equivalent to remainder of the prisoner's imposed term of imprisonment, consistent with the method for calculation described below.  Pre-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those credits already applied to early transfer for supervised release.

Exhibit 4



**U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E   N O T I C E
OPI:          CPD/CPB
NUMBER:   5410.01 CN-1
DATE:        February 6, 2023

# First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

/s/
*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following changes to Program Statement 5410.01, **First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)**, dated November 18, 2022.

*The highlighted text has been added to **Section 5. RISK AND NEED ASSESSMENT**:*
If an inmate fails to complete a recommended EBRR or PA to address an identified need area, staff will enter the applicable fail or withdraw code into SENTRY, and the inmate will not be considered to have opted out, and therefore, in non-earning status.

An inmate will be reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration **at a BOP institution**.  As defined in the Program Statement **Inmate Classification and Program Review**, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan, as appropriate.  The inmate will receive a copy of their updated Individualized Need Plan which will include the reassessed risk level, need areas, and program recommendations.  **Inmates placed in prerelease custody, and who are not subject to regularly scheduled program review, will not receive reassessments.  For inmates in prerelease placement, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.**

*The highlighted text has been added to **Section 6. HOW TO EARN FTCs**:*
**For inmates in prerelease custody, "the most recent two consecutive risk assessments" refers to the final two risk assessments conducted while the inmate was at a BOP institution, prior to the application of FTCs, i.e., the inmate's transfer to supervised release**

**or prerelease custody.  For those inmates who have not completed two assessments prior to transfer to prerelease custody, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.**

*The highlighted text has been added to **Section 8. TRACKING AND EARNING OF FTCs:***
**FSA Time Credit Assessments (FTC Worksheets) will be automatically uploaded to the Inmate Central File during each auto-calculation.  Inmates will be provided a copy of the most recent FTC Worksheet during regularly scheduled program reviews.**

*The highlighted text in has been changed (either added or struck through) in **Section 10. APPLICATION OF FTCs:***
~~**While inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible, they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved.  An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of FTCs.**~~

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure,** separate from any FSA eligibility criteria, and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement. ~~**For inmates with minimum or low risk who have not yet maintained two consecutive assessments, they will need to submit a BP–A0148, Inmates Request to Staff, during their regularly scheduled Program Review in order to have their early application of FTCs considered.  The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.**~~

**Once an inmate has been transferred to prerelease custody pursuant to the procedures outlined in this section, the inmate will maintain the recidivism risk level the inmate had at the time of the transfer, unless the inmate benefits from a lower recidivism risk level based on the passage of time or the inmate's actions result in a higher risk rating.  If an inmate is removed from prerelease custody for a violation, and is returned to a BOP institution, the inmate's recidivism risk level will be reassessed pursuant to the procedures outlined in Section 5 of this Program Statement.**

For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:

- ~~Has no detainers or unresolved pending charges, to include unresolved immigration status and~~

- Is not the subject of a final order of removal under immigration laws, and

As used in this Section, "last risk and needs assessment" refers to the final risk and needs assessment conducted while the inmate was at a BOP institution, prior to the inmate's transfer to supervised release or prerelease custody.

*The highlighted text has been added to the* **REFERENCES** *section:*

7310.04  CN-1   Community Corrections Center (CCC) Utilization and Transfer
Procedure (12/16/1998)



**U.S. Department of Justice**
Federal Bureau of Prisons

PROGRAM STATEMENT
OPI:          CPD/CPB
NUMBER:   5410.01
DATE:        November 18, 2022

# First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

*/s/*
*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

1.  **PURPOSE AND SCOPE**

**§ 523.40 Purpose.**

**(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115-391, December 21, 2018, 132 Stat. 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits."**

**(b) Generally, as defined and described in this subpart, an eligible inmate who successfully participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).**

The purpose of this policy is to establish Bureau of Prisons (Bureau) criteria and procedures for awarding time credits pursuant to 18 U.S.C § 3632(d)(4) and 18 U.S.C § 3624(g) to eligible inmates under the provisions of First Step Act of 2018 (FSA) codified in part in Title 18 U.S.C. § 3632.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.



a. **Program Objectives**. The expected results of this Program Statement are to:

- Inform inmates and staff of the process for earning, documenting, applying, forfeiting, and restoring after forfeiture FSA Time Credits (FTCs) in accordance with the FSA.
- Inform inmates and staff of the circumstances which would preclude an inmate from earning and/or applying FTCs.
- Identify the process for applying FTCs in combination with the Residential Drug Abuse Treatment Program (RDAP) early release benefit under 18 U.S.C. § 3621(e).

b. **Institution Supplement**.  None required. Should local facilities make any changes outside changes required in national policy or establish any additional local procedures to implement national policy, the local Union may invoke to negotiate procedures or appropriate arrangements.

2. **BACKGROUND**

The FSA provides eligible inmates may earn FTCs for successfully participating and completing approved EBRR programs or PAs.  The FSA prohibits inmates from receiving credit prior to its enactment, prior to the commencement of the inmate's sentence, or if the inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. The FSA allows qualifying inmates to apply FTCs toward prerelease community-based placement (i.e., Residential Reentry Center (RRC) and/or home confinement (HC)). Further, at the discretion of the Director of the Federal Bureau of Prisons (Director), the FSA allows for FTC to be applied toward early release to supervision.

3. **DEFINITIONS OF TERMS**

§ 523.41 Definitions.

(a) *Evidence-Based Recidivism Reduction (EBRR) Program.* **An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:**

    **(1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;**
    **(2) Family relationship building, structured parent-child interaction, and parenting skills;**
    **(3) Classes on morals or ethics;**



(4) **Academic classes;**
(5) **Cognitive behavioral treatment;**
(6) **Mentoring;**
(7) **Substance abuse treatment;**
(8) **Vocational training;**
(9) **Faith-based classes or services;**
(10) **Civic engagement and reintegrative community services;**
(11) **Inmate work and employment opportunities;**
(12) **Victim impact classes or other restorative justice programs; and**
(13) **Trauma counseling and trauma-informed support programs.**

A list of approved EBRR programs is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division's intranet pages. The list will be updated as programs/activities are added.

**(b) *Productive Activity (PA).* A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating.**

Productive activities include a variety of groups, programs, classes and individual activities which can be either structured or unstructured. These pro-social activities contribute to an inmate's overall positive institutional adjustment, to include maintaining clear institution conduct, and include, but are not limited to:

- Structured, curriculum-based group programs and classes
- Productive, free-time activities (e.g., recreation, hobby crafts, or religious services)
- Family interaction activities (e.g., social visiting)
- Personal growth and development classes (e.g., adult continuing education classes)
- Institution work programs
- Community service projects
- Participation in an Inmate Financial Responsibility plan

The Bureau has approved a group of specific, structured, curriculum-based PAs which are available to assist the inmate in addressing identified needs. The list is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division intranet pages. The list will be updated as programs/activities are added.

**(c) *Successful participation.***

**(1) An eligible inmate must be "successfully participating" in EBRR Programs or**

**PAs to earn FSA Time Credits for those EBRR Programs or PAs.**
**(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.**

An inmate will remain in FTC earning status while on any waitlist for EBRR Programs or PAs recommended based on the inmate's needs assessment, not to exceed two assessment periods, as long as the inmate has not refused or declined to participate. Active participation in at least one EBRR Program or PA by the inmate supersedes this requirement. Exceptions to the two-assessment period time frame can be granted by the Regional Director upon request from the Warden. However, should an inmate refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist, staff will enter the applicable decline code in SENTRY, and the inmate will be considered declined, or opted out, for the entire waitlist period. The waitlist period is defined in terms of the corresponding need area(s). When an inmate declines participation after being on a waitlist, the auto-calculation application will first identify any need areas associated with the declined program and then identify the oldest waitlist associated with the need area(s). Any credits earned since the oldest waitlist associated with the need area, without intervening participation, will be rescinded to reflect the inmate's refusal.

**(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.**
**(4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:**
**(i) Placement in a Special Housing Unit;**

Inmates in Disciplinary Segregation status will not be considered to be "successfully participating." Inmates in restrictive housing for Administrative Detention shall obtain FTCs if they otherwise remain in earning status under the policy.

**(ii) Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);**
**(iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);**

In the case of placement or transfers outside the institution (e.g., furlough, writ, escorted trip, outside hospital placement, etc.), an inmate will continue to earn FTCs if they are in the institution for any part of the day. An inmate must be out of the institution for the entire 24-hour day before the inmate reverts to non-earning status.  Upon return to the institution, the inmate's earning status will resume.

**(iv) Placement in mental health/psychiatric holds; or**
**(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).**

An inmate is considered to be opting out, and therefore, is not in earning status, if the inmate refuses or declines to participate in any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. Further, an inmate is considered to be opting out if the inmate refuses to participate in or fails to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's assessment system.  See the Program Statement **First Step Act Needs Assessment**.

**(5)(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.**

An inmate's refusal to complete any portion of the SPARC-13 or to participate in EBRR programs or structured, curriculum-based PAs recommended to address an identified need is documented in SENTRY using FSA-specific assignments. See the Program Statement **First Step Act Needs Assessment.**

**(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation. (*see* this part: 28 C.F.R. part 541)**
**(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).**

Note: C.F.R. citation added due to typographical error in published regulations.

(d) *Eligible inmate* —

    (1) *Eligible to earn FSA Time Credits.* **An inmate who is *eligible to earn* FSA Time Credits is an *eligible inmate* for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.**

    (2) *Exception.* **If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not *eligible to earn* FSA Time Credits.**

Federal inmates in state custody are not eligible to earn FTCs.  Additionally, state boarders, treaty transfers inmates, and military inmates sentenced pursuant to the Uniform Code of Military Justice who are serving their sentence in Bureau custody are not eligible to earn FTCs.

Inmates sentenced under the Code of District of Columbia (DC Code) cannot earn FTCs unless or until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility). If and when the earning of FTCs is authorized for inmates sentenced under DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY.  Any retroactive application of FTCs will be made consistent with the authorities granted under DC Code.

## 4. DETERMINATION OF ELIGIBILITY

At the inmate's Initial Classification, the unit team will conduct a review of the inmate's current conviction(s) as well as prior criminal convictions to determine the inmate's eligibility to earn FTCs.

For the current offense(s) review, the unit team will review the Judgement & Commitment (J&C) Order and the Presentence Investigation Report (PSR) for sentencing enhancements, if necessary, to determine if the inmate is ineligible.  The list of FTC ineligible offenses, identified by statute, based on the inmate's current offense(s) is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch intranet page.  If an inmate is determined to be ineligible based on the current offense(s), no review of prior offenses is required.

For the prior conviction review, an inmate is ineligible to earn FTCs if:

- The current offense is determined to be a "serious violent felony" not already specifically listed by the statute, and

- The inmate was sentenced to a term of imprisonment of more than a year for the current offense, and
- The inmate served a term of imprisonment of more than a year for a previous federal or state offense consisting of murder, voluntary manslaughter, assault with intent to commit murder, aggravated sexual abuse and sexual abuse, abusive sexual contact, kidnapping, carjacking, arson, or terrorism.

Additional criteria regarding the prior offense include:

- The conviction must have been based on an adult conviction. Juvenile adjudications are not considered, and
- If the prior conviction is a state offense, the state offense must match the specific federal offense listed above element-by-element.

For purposes of this review only, "serious violent felony" offense is defined by 18 U.S.C. § 3559(c)(2)(F):

(i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses; and

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]

Due to the complexity of the prior offense review, questions regarding whether an offense is disqualifying may be referred to an institution's local Consolidated Legal Center (CLC) for guidance.

An inmate's eligibility status will be documented on the inmate's Individualized Needs Plan in the Insight case management system, and the inmate will receive a copy. The unit team will also enter the appropriate FSA eligibility assignment into SENTRY.

## 5.  RISK AND NEED ASSESSMENT

All sentenced inmates, regardless of eligibility status, will receive both a risk and need assessment.  The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) is the recidivism risk assessment tool and part of the Bureau's FSA-approved Risk and Needs Assessment System.  The PATTERN tool is completed during the inmate's Initial Classification and is used to assign each incoming inmate an initial recidivism risk level of Minimum, Low, Medium, or High.  The Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13) is the Bureau's needs assessment system and the other half of the Bureau's FSA-approved Risk and Needs Assessment System.  It is used to assess the inmate in 13 need areas which can be targeted to reduce the inmate's risk of recidivating.  See the Program Statement **First Step Act Needs Assessment.**

After the inmate's arrival to their designated facility for service of their sentence and during the initial admission and orientation phase, the PATTERN and SPARC-13 assessments will be completed.  While PATTERN is completed during the inmate's Initial Classification, the SPARC-13 is a multi-part, multi-department assessment process.  Ordinarily, the Initial Classification is completed within 28 days of the inmate's arrival, but completing the PATTERN tool requires the inmate's sentence computation to be completed.  If the sentence computation is incomplete, the Initial Classification should be delayed pending its completion, and the basis for delay should be annotated on the inmate's Program Review Report.  The SPARC-13 is ordinarily completed within the 30 days of an inmate's arrival, however, portions of the SPARC-13 assessment require the inmate's active participation.  Failure on the inmate's part to complete the survey assessments timely will delay completion and negatively impact the inmate's ability to begin earning FTCs as the inmate will be considered "opted out," and therefore is in non-earning status regardless of eligibility to earn FTCs.

Using SPARC-13, staff will recommend and document EBRR programs and/or PAs for inmates consistent with the requirements of the Program Statement **First Step Act Needs Assessment.** If the inmate declines to participate in an EBRR program or PA which has been recommended based on an identified needs area, the department staff assessing the need area will enter a program decline code indicating the inmate's opt out status; otherwise, the inmate will be placed in the program or on a waitlist with the applicable assignment keyed into SENTRY by the department staff assessing the need area.

Should an inmate later refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist, staff will enter the applicable decline code in SENTRY, and the inmate will be considered declined for the entire period on the waitlist.  Any credits earned during the waitlist period will be rescinded to reflect the inmate's refusal.

If an inmate fails to complete a recommended EBRR or PA to address an identified need area, staff will enter the applicable fail or withdraw code into SENTRY, and the inmate will not be considered to have opted out, and, therefore, in non-earning status. Inmates with cognitive or physical disabilities may require more time or additional accommodations to complete an EBRR program or PA. The Program Statement **Management of Inmates with Disabilities** provides guidance on developing local accommodations. If questions about the impact of a disability on earning FTC arise, staff may contact the Women and Special Populations Branch in the Reentry Services Division.

During the inmate's Initial Classification, the unit team will develop an Individualized Need Plan for the inmate based on the results of the inmate's needs assessment and related recommendations provided by the departments that assessed the need area as documented in SENTRY and Insight Feedback. Recommendations may include EBRR programs and/or structured curriculum-based PAs designed to address the inmate's identified need areas and based on the inmate's ability to complete the program/activity.

Additional groups, programs, classes, or unstructured activities may be recommended to assist the inmate in establishing positive institutional adjustment and involvement in pro-social activities. The inmate's risk level, needs assessment results, and program recommendations will be documented on the inmate's Insight Individualized Need Plan, and the inmate will receive a copy.

An inmate will be reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration **at a BOP institution**. As defined in the Program Statement **Inmate Classification and Program Review**, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan, as appropriate. The inmate will receive a copy of their updated Individualized Need Plan which will include the reassessed risk level, need areas, and program recommendations. **Inmates placed in prerelease custody, and who are not subject to regularly scheduled program review, will not receive reassessments. For inmates in pre-release placement, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.**

6. **HOW TO EARN FTCs**

**§ 523.42 Earning First Step Act Time Credits.**

(a) *When an eligible inmate begins earning FSA Time Credits.* **An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the**

**sentence will be served).**

Because the ability to accrue time credits begins after the inmate's current term of incarceration begins (e.g., the date the inmate arrives at or voluntary surrenders to their initially designated Bureau facility to serve their sentence), an inmate cannot earn FTCs during pretrial confinement, nor can they earn credits based on a prior incarceration.  Further, an inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed, or once released to their supervised release term.

**(b) *Dates of participation in EBRRs or PAs.***
    **(1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.**
    **(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.**
    **(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.**

**(c) *Amount of FSA Time Credits that may be earned.***
    **(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.**
    **(2) For every thirty day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:**
        **(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and**
        **(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.**

The calculation of FTCs is fully automated and based on the number of 30-day periods in earning status.  Additionally, the eligibility to earn FTCs is distinct from the ability to apply/use FTCs.

For inmates in prerelease custody, "the most recent two consecutive risk assessments" refers to the final two risk assessments conducted while the inmate was at a BOP institution, prior to the application of FTCs, i.e., the inmate's transfer to supervised release or prerelease custody. For those inmates who have not completed two assessments prior to transfer to prerelease custody, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.

7. **LIMITATIONS ON EARNING OF FTCs**

Despite being eligible to earn FTCs, there are situations where an inmate is unable or unwilling to participate in EBRR programs or PAs, and therefore cannot earn FTCs. Such circumstances may include, but are not limited to, the following:

- Placement in Disciplinary Segregation status);
- Designation status outside the institution (e.g., an outside medical trip or escorted trip, in-transit or at an in-transit facility, a furlough for the full day, etc.);
- Placement in the custody of another jurisdiction (e.g., on state or federal writ, transfer to state custody for service of sentence, transfer to another federal agency, etc.);
- Placement in mental health/psychiatric holds;
- Detention as a material witness or for civil contempt;
- Placement in civil commitment; or
- "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

If an inmate refuses to participate in required programs (e.g., Inmate Financial Responsibility (FRP), Drug Education, etc.), the inmate will not earn FTC. While these programs are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs.

8. **TRACKING AND EARNING OF FTCs**

FTCs are awarded based on the inmate's eligibility to earn credit, completion of the PATTERN and SPARC-13 assessments, and ongoing participation in programs designed to reduce the risk of recidivating. Once an inmate is in earning status, they will remain in earning status unless or until the limitations outlined in the previous section of this Program Statement are applied.

FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews, based on a completed 30-day period. No FTCs will post to the inmate's record if he/she has not accrued 30 days in earning status. Rather, any days in FTC earning status will carry over to the next monthly cycle, and the inmate will receive all

applicable FTCs at that time.

For example: If the first monthly posting of FTCs for an inmate occurs only five days after completing their initial assessments and going into earning status, no FTCs will post to the inmate's record as they have not yet accrued 30 days in earning status. Rather, the five days will carry over to the next monthly cycle, and the inmate will receive the FTCs at the end of the second month. If later, the inmate goes into FRP Refuse or declines a recommended needs-related program and goes into opt out status, the inmate is no longer in earning status, and therefore, stops accruing days toward FTCs and no FTCs will post to the inmate's record. Once the inmate returns to earning status, they will resume accruing days toward the earning of FTCs.

FSA Time Credit Assessments (FTC Worksheets) will be automatically uploaded to the Inmate Central File during each auto-calculation. Inmates will be provided a copy of the most recent FTC Worksheet during regularly scheduled program reviews.

9. **LOSS AND RESTORATION OF FTCs**

§ **523.43 Loss of FSA Time Credits.**

**(a) Procedure for loss of FSA Time Credits. An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA. The procedures for loss of FSA Time Credits are described in 28 CFR part 541.**

Per the FSA, only earned time credits can be lost, and future time credits cannot be impacted. For purposes of inmate discipline, time credits are considered officially "earned" during the monthly auto-calculation or at the time of the inmate's last Program Review assessment, whichever was most recent. A sanction of loss of FSA time credits by the Discipline Hearing Officer (DHO) may only be imposed when an inmate is found to have committed a prohibited act. Loss of FTCs cannot be entered as a suspended sanction. See the Program Statement **Inmate Discipline Program**.

**(b) How to appeal loss of FSA Time Credits. Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).**

**(c) Restoration of FSA Time Credits. An inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau.**

The authority to restore any portion of the offender's lost FTCs is delegated to the Warden and may not be delegated lower than the Associate Warden level.  The inmate may request restoration of FTCs during a regularly scheduled Program Review and only after having maintained clear conduct for two consecutive risk and needs assessments.   The Unit Manager will submit a request using BP-A1156, Restoration of Federal Time Credits, along with the unit team's recommendation, through the DHO to the Warden (or designee) for final decision. If the recommendation to restore FTCs is approved, the Unit Manager or Acting Unit Manager will process the restoration approval into the inmate's record and update via Insight or Insight Feedback.

Whether denied or approved, a copy of the decision will be provided to the inmate.  If denied, the inmate will be advised that they may reapply for FTC restoration six months from the date of denial, if clear conduct is maintained.  A copy will be maintained in the inmate's J&C and electronic inmate central file (e-ICF), with other sentence computation documents.

## 10. APPLICATION OF FTCs

**§ 523.44 Application of FSA Time Credits.**

**(a)** *How Time Credits may be applied.* **For any inmate eligible to earn FSA Time Credits under this subpart who is:**

> **(1) Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.**
> **(2) Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (*see* 18 U.S.C. 3632(d)(4)(E)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.**
> **(3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code (see Section 105 of the FSA, Pub. L. 115-391, 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release. This paragraph (a)(3) will not bar the application of FSA Time Credits, as authorized by the DC Code, for those serving a term of imprisonment for an offense under the DC Code.**

Inmates sentenced under the DC Code can neither earn nor apply FTCs unless and until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility) and defines the criteria which authorizes the application of FTC (i.e., any circumstances, if any, which preclude application).  If and when the earning and application of

FTCs is authorized for inmates sentenced under the DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY. Any retroactive application of FTCs will be made consistent with the authorities granted under the DC Code.

~~While inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible, they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved. An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of FTCs.~~

**(b)** *Consideration for application of FSA Time Credits.* Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:
> **(1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;**
> **(2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and**
> **(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.**

**(c)** *Prerelease custody.* **The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:**
> **(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or**
> **(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:**
>> **(i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;**
>> **(ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and**
>> **(iii) The prisoner is unlikely to recidivate.**

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure**, ~~separate from any FSA eligibility criteria,~~ and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement.

However, in all cases, earned time credits will be applied to prerelease custody (RRC and/or HC) as required by the First Step Act.

The First Step Act requires that, if an individual meets the criteria outlined in (c)(1), the credits must be applied when the amount of time credits earned is equivalent to remainder of the prisoner's imposed term of imprisonment, consistent with the method for calculation described below.  Pre-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those credits already applied to early transfer for supervised release.

~~For inmates with minimum or low risk who have not yet maintained two consecutive assessments, they will need to submit a BP-A0148, Inmates Request to Staff, during their regularly scheduled Program Review in order to have their early application of FTCs considered.  The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.~~

Inmates with high or medium PATTERN recidivism risk levels are exceptions to the routine application of this policy with regard to awarding FTCs toward early transfer to prerelease custody and/or supervised release.  The Warden will consult with the Regional Director before approving an inmate under section (c)(2), unless an exemption is granted by the Regional Director consistent with the Program Statement **Directives Management Manual**.  Ordinarily, inmates considered inappropriate for early transfer to prerelease custody or supervised release under section (c)(2) include, but are not limited to, inmates who:

- Have a high or medium PATTERN recidivism risk level
- Have a current or prior offense listed in the Program Statement **Categorization of Offenses**. Early transfers for such inmates are considered only in highly unusual circumstances. Ordinarily, an inmate is precluded from receiving an early transfer if he/she has an offense listed in either the Section titled "Offenses categorized as crimes of violence", or the Section titled, "Offenses that at the Director's discretion shall preclude an inmate's receiving certain Bureau program benefits".
- Has a Public Safety Factor (PSF) that the Designation and Sentence Computation Center (DSCC) Administrator has not waived.
- Have a history of community-based supervision (i.e., probation, parole, supervised release, halfway house, home confinement, etc.) non-compliance to include technical violations, escape, absconding/eluding, and/or new criminal conduct.
- Inmates who have been found to have committed 100 OR 200 level prohibited acts during the current term of incarceration, or the prohibited acts of using drugs or alcohol, drug possession, possession of drug paraphernalia, or introduction of drugs into Bureau institutions within the last three years from the date of the incident.

Additionally, inmates with high or medium PATTERN recidivism risk levels must demonstrate a good faith effort to lower their recidivism risk by:

- Maintaining clear conduct for at least three years from the date of the request.
- Successfully completing at least one of the Bureau's residential EBRR programs recommended based on an identified need area within the past five years, if any have been assigned.
- Is otherwise compliant with all the other requirements of this Program Statement with regard to successful program participation.

Inmates may initiate a request under (c)(2) by submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.

For Minimum and Low PATTERN risk inmates, consistent with the methodology described in Sections 6 and 7 of this policy, the Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence. The Bureau will make an initial projection based on the inmate's PATTERN risk level. (For inmates currently in custody as of the effective date of this policy, the PATTERN risk level will be presumed to be the current level). This FSA PRD is subject to change during the inmate's incarceration, and it will be adjusted if the inmate's PATTERN score changes or if the inmate enters non-earning status.

FTC will not be applied towards an inmate's release date unless earned. Medium and High PATTERN risk inmates may earn FTC, but will not receive an estimated FSA PRD.

RRC and/or HC referrals will ordinarily be submitted to the respective Residential Reentry Management (RRM) office 12 months in advance of the inmate's PRD or at least 60 days prior to the projected RRC/HC placement date, whichever is greater. The RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review (see 18 U.S.C. § 3621(b)), required under the Second Chance Act, plus the remaining number of FTC days not applied to supervised release at the time of the referral. When determining the FTC days available to be applied toward RRC/HC placement, the Bureau will assume that the inmate will remain in earning status from the referral date until the transfer to prerelease custody. There is no expectation the RRC/HC placement date will be modified once the referral has been submitted to the RRM office.

**Once an inmate has been transferred to prerelease custody pursuant to the procedures outlined in this section, the inmate will maintain the recidivism risk level the inmate had at the time of the transfer, unless the inmate benefits from a lower recidivism risk level based**

on the passage of time or the inmate's actions result in a higher risk rating.  If an inmate is removed from prerelease custody for a violation, and is returned to a BOP institution, the inmate's recidivism risk level will be reassessed pursuant to the procedures outlined in Section 5 of this Program Statement.

Prerelease placement is dependent on, but not limited to, the inmate's release residence, program requirements, and available contract bed space and funding.

**(d)** *Transfer to supervised release.* **The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:**
> **(1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;**
> **(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and**
> **(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.**

For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:

- Has a term of supervised release to follow the term of incarceration
- Has a low or minimum PATTERN risk level
- Has maintained a low or minimum PATTERN risk level for at least two consecutive assessments conducted during regularly scheduled Program Reviews
- ~~Has no detainers or pending charges, to include unresolved immigration status and~~
- Is not the subject of a final order of removal under immigration laws, and
- Has not opted out or refused to participate in any required program, and therefore, is in earning status.

As explained in Section 10(b), the Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody.   If an inmate on prerelease custody has already earned the maximum 365 days of credit toward supervised release, the PRD will be adjusted only if the inmate loses earned FTCs consistent with Section 9.  If an inmate is returned to prison for a violation during prerelease custody or any other reason, their projected FTCs may be adjusted depending on any failure to remain in earning status.

As used in this Section, "last risk and needs assessment" refers to the final risk and needs

assessment conducted while the inmate was at a BOP institution, prior to the inmate's transfer to supervised release or prerelease custody.

## 11. RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM EARLY RELEASE BENEFIT AND FTCs

Inmates who successfully complete the Residential Drug Abuse Treatment Program (RDAP) and are eligible for early release pursuant to 18 U.S.C. § 3621(e) may also earn FTCs which could be applied towards an additional reduction to their Projected Release Date (PRD). Eligibility to apply earned FTCs is separate and unrelated to the eligibility requirements under 3621(e).

An inmate must complete all required components of RDAP, including the community-based treatment component, in order to receive the early release benefit pursuant to 18 U.S.C. § 3621(e). The 3621(e) benefit will be applied first to the inmate's sentence computation, followed by the application of FTCs, however, an inmate must have sufficient time remaining to serve to complete all required components of the RDAP program (i.e., 120-day community-based treatment).

In the event an inmate has insufficient time remaining to serve after completing the RDAP program to receive both the early release benefit under 3621(e) and the full 365 days toward early release of earned FTCs, the number of FTC days applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

Regardless of whether the inmate is receiving the 3621(e) release benefit alone or in conjunction with FTCs, the inmate will have a conditional release method entered into SENTRY until the inmate receives a community-based placement date with, at a minimum, the required 120 days and the unit team has submitted a completed BP-A0628, Notification of RRC Placement Date, to the Designation and Sentence Computation Center (DSCC).

Inmates who release early pursuant to section 3621(e) and who also earn FTCs will be keyed with the release method which identifies that both benefits have been applied. The Correctional Systems t intranet page provides a list of FSA release method codes and descriptions for staff.

## 12. ADMINISTRATIVE REMEDIES.

Inmates who wish to seek review of any issue relating to this Program Statement may use the procedures outlined in the Program Statement **Administrative Remedy Program**.

# REFERENCES

*U.S. Codes or Regulations Referenced*
8 U.S.C. § 1101
18 U.S.C. § 3624
18 U.S.C. § 3632
28 C.F.R. § 541
28 C.F.R. § 542

*Program Statements*
1221.66 CN-1   Directives Management Manual (7/21/1998)
1330.18         Administrative Remedy Program (1/6/2014)
5162.05         Categorization of Offenses (3/16/2009)
5200.06         Management of Inmates with Disabilities (11/22/2019)
5220.01         First Step Act Program Incentives (7/14/2021)
5270.09 CN-1   Inmate Discipline Program (11/18/2020)
5322.13         Inmate Classification and Program Review (5/16/2014)
5330.11 CN-1   Psychology Treatment Programs (4/25/2016)
5331.02 CN-2   Early Release Procedures under 18 U.S.C. § 3621(e) (9/27/2017)
5400.01         First Step Act Needs Assessment (6/25/2021)
7310.04 CN-1   Community Corrections Center (CCC) Utilization and Transfer
                 Procedure (12/16/1998)

*Forms*
BP-A0148   Inmate Request to Staff
BP-A0628   Notification of RRC Placement Date
BP-A1156   Restoration of Federal Time Credits

*ACA Standards:*
**American Correctional Association Standards for Adult Correctional Institutions - 5th Edition:**
5-ACI-2C-11, 5-ACI-3C-01, 5-ACI-3C-03, 5-ACI-3C-04, 5-ACI-3C-07, 5-ACI-3C-08, 5-ACI-3C-11, 5-ACI-3C-13, 5-ACI-3C-15, 5-ACI-3C-19,
5-ACI-3C-23, 5-ACI-3D-19, 5-ACI-4A-09, 5-ACI-5B-01, 5-ACI-5B-03, 5-ACI-5B-04, 5-ACI-5B-05, 5-ACI-5B-06, 5-ACI—5B-07, 5-ACI-5B-08,
5-ACI-5B-09, 5-ACI-5E-02, 5-ACI-5E-11, 5-ACI-5E-12, 5-ACI-5E-13, 5-ACI-5E-14, 5-ACI-5E-15, 5-ACI-6A-42, 5-ACI-6C-06, 5-ACI-7B-10

**American Correctional Association Performance Based Standards for Adult Local Detention Facilities - 4th Edition:**
4-ALDF-2A-30, 4-ALDF-2A-47, 4-ALDF-2A-50, 4-ALDF-3A-01, 4-ALDF-3A-02, 4-ALDF-

4C-40, 4-ALDF-5A-04, 4-ALDF-5A-08,
4-ALDF-6B-01, 4-ALDF-6B-02, 4-ALDF-6B-04, 4-ALDF-6B-05, 4-ALDF-6B-08, 4-ALDF-6C-01, 4-ALDF-6C-03. 4-ALDF-6C-04, 4-ALDF-6B-07, 4-ALDF-6C-09, 4-ALDF-6C-11, 4-ALDF-6C-12, 4-ALDF-6C-14, 4-ALDF—6C-15, 4-ALDF-6C-18, 4-ALDF-7D-2

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T

OPI: CPD/CSB
NUMBER: 5270.09
DATE: July 8, 2011.

# Inmate Discipline Program

/s/
*Approved*: Thomas R. Kane
Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

**§ 541.1  Purpose.**

**This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program.  This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts.  Sanctions will not be imposed in a capricious or retaliatory manner.  The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).**

**§ 541.2  Application.**

**This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons.**

This policy applies to all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C. Code felony offenders; and persons held as witnesses, detainees, or otherwise. These provisions do not apply to Federal inmates designated to a non-Federal facility (e.g., inmates serving Federal sentences in state or county facilities).

Federal Regulations from 28 Code of Federal Regulations, part 541, are shown in this type.
Implementing instructions are shown in this type.

Exhibit 5

AFFIDAVIT

HALFWAY House

I Joan Occhiello 72896067 Currently Housed
At Danbury Federal Prison Camp would like to state
the following:

In January 2023 Petitioner was notified and signed
paperwork for Halfway House in Harrisburg Pennsylvania
At that time Petitioner was Housed at Secure Female
Facility Hazleton

Petitioner was told to Return to the Case Manager
in one month to Allow for the Process to begin.

Petitioner finally started asking what the hold up was
Who Stopped the Process Did the Process even Start.

Petitioner was told Harrisburg Halfway House
Refused to Take me Due to Violating.

I Started the Administrative Remedy Process
For Being Denied Halfway House - Check the Record.

I declare under penalty of perjury that the forgoing is true and
correct.

Executed on This day, The _____18th_____ day of _____June_____, 2024

_____          Witness:
                                    Patricia Ricciardi

BEFORE ME, A NOTARY PUBLIC, on this day personally appeared known
to me to be the person whose name is subscribed above, and being
by my first duly sworn, declared that the information above is
true and correct.

Given under my hand and seal of office this _18th_ day of
_JUNE_, 2024.

My commission expires: _03/31/2026_

ALEX VELEZ
Notary Public, Connecticut
My Commission Expires - See License

Exhibit
6

Not A threat

to

Society

Exhibit 7

TRULINCS  72896067 - CICCHIELLO, JOAN - Unit: DAN-O-A

---------------------------------------------------------------------------------------------

FROM: Heitzman, Wendy
TO: 72896067
SUBJECT: Told you this was all FLU
DATE: 06/17/2024 05:06:04 PM

See? even they said so!

I guess I will just show up  There are no documents

----- Forwarded Message -----
From: Cheryl Kennedy <cheryl_kennedy@pamp.uscourts.gov>
To: joancicch@myyahoo.com <joancicch@myyahoo.com>
Cc: Dan Karhnak <daniel_karhnak@pamp.uscourts.gov>; Ashley Cheesman (ashley.r.cheesman@usdoj.gov)
<ashley.r.cheesman@usdoj.gov>; Thomas, David B. (USAPAM) [Contractor] <david.b.thomas@usdoj.gov>; Adriana Sipple
<adriana_serpicosipple@pamp.uscourts.gov>
Sent: Monday, December 18, 2023 at 12:26:00 PM EST
Subject: Thursday, 12/21, 130pm

Joan-


Just a reminder of your scheduled appointment at the U.S. Probation Office in Williamsport (address below).  You will now meet
with my supervisor, Dan Karhnak, in my absence.  As a reminder, please be sure to have all of the requested documents for
FLU.  Again, I remind you, if you have any questions as to what you need to bring, call and take care of this with FLU prior to
your scheduled appointment.  Again, your office appointment is strictly for bringing in these requested documents and to
address your noncompliance with such to this date.


"Blowing out someone's candle, does not make anyone else's shine any brighter."


Take care,

Cheryl C. Kennedy

U.S. Probation Officer

Middle District of Pennsylvania

240 W. Third Street, Suite #114

Williamsport, PA 17701

Email: Cheryl_Kennedy@pamp.uscourts.gov

Office: 570-601-8527

Fax: 570-323-5862



TRULINCS 72896067 - CICCHIELLO, JOAN - Unit: DAN-O-A

--------------------------------------------------------------------------------

FROM: Heitzman, Wendy
TO: 72896067
SUBJECT: more on the parking tickets
DATE: 06/17/2024 04:51:04 PM

From: joan cicchiello <joancicch@myyahoo.com>
To: mdj12104@dauphincounty.gov <mdj12104@dauphincounty.gov>
Sent: Tuesday, January 9, 2024 at 09:50:56 AM EST
Subject: parking tickets

MDJ 12-1-04

E-mail sent to: mdj12104@dauphincounty.gov

Dear Magistrate


I am sending this e-mail to state that I plea.                    NOT GUILTY        to these parking tickets:


Date of these tickets:      7/24/2023

Ticket  Numbers:


                    TR 5144-2023
                    TR5145-2023

These tickets turned into summary warrants.

My name is Joan Cicchiello
            35 West Avenue
            Mt Carmel, Pa 17851

Phone numbers:

            570-389-3089
                  or
            570-863-8874




Joan Cicchiello

1/9/2024

*18 U S C*

Joan Cicchiello
Dispositional Report
Page 2

offenses that resulted in the original terms of supervised release, less any term of
imprisonment that is imposed upon revocation. 18 U.S.C. §3583(h).

## Guideline Provisions:

The violations are **Grade C violations** pursuant to USSG §7B1.1(a)(3). Upon finding of
a Grade C violation, the Court may revoke supervised release, extend the term of
supervised release, and/or modify the conditions of supervised release, USSG
§7B1.3(a)(2). Based on a **Criminal History Category of I** the guideline custody range is
**3 to 9 months** on Dkt. No. 1:15CR00223-001 pursuant to USSG §7B1.4(a).

Based on a **Criminal History Category of III** the guideline custody range is **5 to 11
months** on Dkt. No. 1:21CR00100-001 pursuant to USSG §7B1.4(a).

In accordance with the provisions of USSG §7B1.3(d), any restitution, fine or special
assessment imposed in connection with the sentence for which revocation is ordered that
remains unpaid at the time of revocation shall be ordered to be paid in addition to the
sanction determined under USSG §7B1.4 (Term of Imprisonment).

## Compliance with Supervision Conditions:

On May 9, 2018, Joan Cicchiello appeared before United States District Judge John E.
Jones III on the charge of Healthcare Fraud (Dkt. No. 1:15CR00223-001). She was
sentenced to 72 months imprisonment followed by 36 months supervised release. She
was ordered to pay $151,122.17 restitution (satisfied), a $150,000.00 fine ($148,784.07
balance) and a $100 special assessment (satisfied).

On June 29, 2022, Joan Cicchiello was sentenced before United States District Judge
Christopher C. Conner on the charge of Perjury (Dkt. No. 1:21CR00100-001). She was
sentenced to 15 months imprisonment, consecutive to Dkt. No. 1:15CR00223-001,
followed by 36 months supervised release (concurrent to Dkt. No. 1:15CR00223-001)
and a $100 special assessment (satisfied).

On October 28, 2022, Dkt. No. 1:15CR00223-001 was reassigned to the Honorable
Christopher C. Conner.

On July 12, 2023, Joan Cicchiello was released from custody and commenced her term of
supervised release in the Middle District of Pennsylvania.

On July 24, 2023, Joan Cicchiello received two traffic citations from Harrisburg Parking
Authority.

*Pg 2*

Joan Cicchiello
Dispositional Report
Page 3

On September 14, 2023, Ms. Cicchiello was approved for the low intensity supervision program.

On January 8, 2024, the probation officer directed Ms. Cicchiello to contact the magistrate's office and to resolve the two aforementioned outstanding traffic matters and to do so no later than January 11, 2024. At the time of the filing of the petition for revocation of supervised release, January 12, 2024, she had failed to respond on either citation resulting in a summary warrant being issued for each citation. Since Ms. Cicchiello's Initial Appearance Hearing before United States Magistrate Judge Susan E. Schwab on January 18, 2024, the defendant has entered pleas of "not guilty" on each citation. A summary trial is scheduled for each matter on May 16, 2024, before Magisterial District Judge James A. Lenker.

Despite numerous directives from the probation office, the Financial Litigation Unit (FLU) of the United States Attorney's Office, and more recently, United States Magistrate Judge Schwab, the defendant has failed to submit a complete financial affidavit with the required supporting documentation and information. Joan Cicchiello has been given multiple opportunities to provide the required documentation and has failed to cooperate with the probation office and the Financial Litigation Unit. Despite continued attempts with the subject via her attorney, FLU is still awaiting pertinent information and documentation related to a trust.

On October 12, 2023, Joan Cicchiello was issued a financial affidavit to complete and return to the probation officer and the Financial Litigation Unit (FLU) by November 2, 2023. On October 23, 2023, the subject submitted this paperwork; however, the affidavit was largely incomplete and failed to attach all documents. On October 24, 2023, FLU advised Ms. Cicchiello of such and gave her very specific, and detailed instructions of what she needed to submit. Another financial affidavit was submitted for her to complete in its entirety, along with specific documents (bank accounts, trust, corporation, etc.). On October 25, 2023, the probation officer provided the defendant with the same instruction set forth by FLU with a submission date of November 14, 2023.

On November 1, 2023, the probation officer was contacted by FLU and provided a copy of a letter which they received from the subject in which she states she owns nothing and the forms were filled out correctly. On November 16, 2023, the probation officer contacted Joan Cicchiello and directed her, once again, to complete a financial affidavit and to complete, in its entirety, along with requested documentation by November 30, 2023. On November 30, 2023, Ms. Cicchiello failed to submit this financial affidavit. A call with the subject on that date indicated that she had a medical appointment and

TRULINCS  72896067 - CICCHIELLO, JOAN - Unit: DAN-O-A

------------------------------------------------------------------------------------

FROM: Heitzman, Wendy
TO: 72896067
SUBJECT: Trust Account
DATE: 06/17/2024 04:36:04 PM

I don't get it. You gave this to them. You literally gave this to them. So what the ~~____~~ do they even want?

CICCHIELLO TRUSE
JOAN M CICCHIELLO TRUSTEE
JAMES R CICCHIELLO JR TRUSTEE
35 WEST AVENUE
MOUNT CARMEL PA 17851

Decir Joan Cicchiello:
Per your request, your member account number with PSECU is.8172993589. Our routing
number is 231381116.
If you have any questions, you may reach us 8 a.m. to 9 p.m. Monday through Friday or Saturday
9 a.m. to 5 p.m. at our toll-free number 800.237. 7328. Please enter 5 and then 5 again at the
menu prompt to speak with a Member Service Representative.
Sincerely,  _J_
Jc_~ / .,,. /J..d-
-
1._ i~¡
r
/.o Cßt.; /

Kenneth #484
Branch Service Advisor
PSECU

pg 5



⇔72896-067⇔
Joan Cicchiello
33 1/2 Pembroke RD
Danbury, CT 06811
United States

Clerk of Courts
Brien mc mahon Fed Building
                          And
United States District Court.
915 LaFayette Boulevard
Room 400

Bridgeport Ct
               06604-4706